And Mr. Is Mr. Allen on the line yet? There we are. And so we will proceed with our next argument. Marcus Underwood versus the City of Bessemer and other appellees. Andrew Clay Allen is here for Appellant Underwood and Richard Warren Kenney III is here for the appellees. And Mr. Allen, you may proceed. Thank you, Your Honor. Please support. My name is Andrew Clay Allen and I'm here on behalf of Marcus Underwood, the appellant in this matter. The linchpin of this case is whether Marcus Underwood threatened the lives of defendant officers, Christopher Assarisi or Daniel Partridge while allegedly speeding away from what is commonly known as a Terry stop. Mr. Underwood. It looks like you're frozen, counsel. Mr. Allen, it looks like you're frozen and we could just see your figure, but we can't hear you. I'm gonna ask Mr. Hudson, our IT specialist to see if he can correct this problem because Mr. Allen is frozen and I'm going to ask Ms. Geddes to stop the clock. All right, it looks like everybody is back and ready to proceed. Mr. Hudson, Ms. Geddes, are you ready? They're all ready, Judge Wilson. Okay, well, we'll proceed with the next argument. Court is now in session. And this is Marcus Underwood versus the city of Bessemer. Yes, sir. Andrew Clay Allen is here for appellant Underwood and Richard Warren Kenney III is here for the appellees and Mr. Allen, you may proceed. Thank you, Your Honor. And I appreciate the indulgence of the court in light of our technical difficulties. My apologies for that. Your Honor, justices of the court, the linchpin of this case is whether Marcus Underwood threatened the lives of Christopher Assarisi and Daniel Partridge while allegedly speeding away from a Terry stop, a stop in which he had not been identified  who had committed a crime, not identified as someone who had instigated any unlawful incident. This incident occurred on June the 14th, 2014. It was Father's Day. He was seeking companionship with friends. He had delivered his children to his former wife's home and he was innocent of any reportable crime. He was not identified by anyone, including the dispatcher who called officers Partridge and Assarisi out to the scene of what was said to be a domestic violence situation between a man and a woman and Mr. Underwood was standing next to another African-American gentleman. And by the way, Assarisi and Partridge are Caucasian and they assumed, as they said in their depositions, that these gentlemen, were guilty until they could prove themselves otherwise. In other words, they both claimed in statements to the Bessemer Police Department that the dispatcher had alleged that a black man had a gun and that is objectively untrue. They had both spoken to one another the night before they gave these statements. That's admitted and it's undisputed that Mr. Underwood was unarmed and had no firearm with him. Yeah, Mr. Partridge and Mr. Assarisi shot at a moving vehicle, albeit one, according to them, that was going so slow as if to stop. From six to eight feet away, they shot 22 rounds of nine millimeter ammunition into his- Mr. Allen, can you go back though and just in your view, tell us what happened when the officers got to the scene before we get to the shooting? I wanna hear your version of the facts and the light most favorable to you before the shooting. Yes, ma'am. And so the officers arrive on the scene and there are two men and nobody's in a car at that time. Is that correct? That is correct. All right, so pick it up there. They drive up, two men are outside. How far were they away from a car? Well- Or do we know? I don't know, but pick it up from there and walk me to, from that point, under your version of the facts, please, sir. Yes, ma'am. What is interesting about the case is that geographically, this is a two lane street with a grassy median dividing the roads. So these policemen arrive without sirens, without lights and one arrives maybe 20 feet before Mr. Underwood's vehicle, which was running and had its headlights on and it- Was he in the car? No, ma'am, not at that time. He was visiting with his friend and there's no question they were loud, but there was no conflict ongoing when the officers arrived. Assarisi arrived first. He was parked ahead of Mr. Partridge. Partridge arrived second. He walked across the street and- Can you tell me where the cars were in relation to each other at that point in time? Well, that's a genuine issue of- I know, but tell us in the light most favorable to your client. I wish I could tell you, Judge, with Justice Hull, with particularity, but as I understand it, those vehicles were moved when the fire department came through. Both vehicles were on the southern side, moving north in the wrong lane. And so Mr. Underwood's car was to the- If you're looking from south to north, his car was on the left-hand side of the road. But were they in the same lane or are they in different lanes? You say it's two lanes. Well, it is two lanes, but they are all in the same lane. All right, let's start with that. And are they all pointed in the same direction or are they pointed in different directions? They're pointed in different directions. Mr. Underwood's vehicle is pointed from north to south. The two police officers' vehicles are pointed from south to north, approximately 30 feet apart. And so when they pull up, do they pull up in the front of his vehicle? Yes, ma'am. Blocking his vehicle movement. Well, they're on the side of the street, so I would not say that they are blocking the vehicle. Okay, but they're facing each other at some point? Well, you've got the two police officers' vehicles situated here. And where is his? And his vehicle was 30 feet in front of theirs. Okay, facing the other way, okay. Facing the other way, yes, ma'am. All right, then tell me what happened next. I just couldn't visualize it. Can you help me? And I understand it now. There is an accident report in the record that will assist you, but it's not clear after the deposition testimony. You've clarified it. They're in virtually the same lane and they're facing each other. Correct. So go on and tell us what happened next. So what happened next was Mr. Underwood and his friend who were having a conversation saw the police appear. And as happens in this part of the world, they wanted to get out of there. And so Mr. Underwood's friend starts walking in a different direction. Mr. Underwood walks towards his car, which is still running, still has the lights on. He gets in his car and wants to move his vehicle out of the way of the police officers. And that's what he attempts to do. And the police officers, not knowing, apparently in relationship to one another where they are, and according to Ms. Harrington, who was a Caucasian witness to this incident, according to her and according to the officers, he was moving as if to come to a stop. He just put his car in gear and they decided to shoot 22 rounds of nine millimeter ammunition at his car from six to eight feet away, depending upon which account you credit and hit him six times. Now, so your time has expired. I'm gonna let you go over, Mr. Allen. This is important. Thank you, sir. And amazingly, he survived that attack. Let me ask you this. Yes, sir. Was the car moving when Officer Partridge went in front of the car? Yes, sir, it was moving. Officer Partridge moved from, I would say the east side to the west side of the lane and then turned around and came back and insinuated himself between the vehicle and any rational route. The answer to my question is the officer stepped in front of a car that was moving. Yes, sir. I'm sorry if I was. And is it disputed whether or not Mr. Underwood had time to break? Did he have time to break? Well, he didn't. According to Ms. Harrington, they started shooting at him before he had time to break and he never accelerated until after those shots were fired. Okay. All right. And you've reserved some time, counsel. Let's hear from Mr. Kearney. May it please the court. My name is Warren. May it please the court. My name is Warren Kearney and I represent the city of Bessemer Defendants in this case. Before we were unfortunately disconnected a little bit earlier, counsel for the appellant, Mr. Underwood, stated that the linchpin of this case is whether Underwood threatened the officers with his car. And respectfully, that is not the linchpin of the case. The linchpin of the case is whether the officers reasonably believed that he was trying to kill them by driving directly at Officer Partridge who was in the middle of the road at that time. And there are several very important factors that are undisputed in this case that demonstrate the reasonableness of the officer's belief that Officer Partridge was being threatened by Mr. Underwood's car. First of all, they were responding to a specific 911 call alleging a domestic violence situation on Holbrook between 17th and 18th Street with two shots fired in the middle of the night. When they get there about two and a half minutes after the 911 call is initiated, they find two black or African-American males arguing back behind a running Nissan Maxima. It's undisputed that one of the males starts walking in a direction away from the running Maxima and Mr. Underwood gets in the driver's seat of that running Maxima despite being instructed by Officer Assarisi not to do so. That's in the appellant's brief at page 14. Assarisi instructed Underwood not to get in the car and he did that. Officer Partridge's testimony is that he arrived second and he is looking at the individual who's walking away from the back of the Maxima. As he's doing that, he's trying to cross the street, walking away from his patrol vehicle that is parked facing Mr. Underwood's car on a one-way street. As he's doing that, his attention is called to Mr. Underwood who is now getting in to the car. And as a result, he starts walking back across the street towards his own car and the driver's side of Mr. Underwood's car. So with respect, he never intentionally put himself in front of a moving vehicle and the district court specifically found that based on- Officer Partridge was never in front of the car? Oh, absolutely he was in front of the car, Your Honor. He was in front of the car basically the whole time, but he's walking back across the street once he realizes- And the reason that he shot was because the car was moving towards him, right? Absolutely, yes, sir. Was the car- Correct, he was ultimately hit with the car. Was the car moving when he got in front of the car? Or is that disputed? His testimony is that he's in the middle of the road when he first realizes that the car is moving towards him. And that's when he unholsters his firearm for the first time, when he realizes the car is coming towards me. He didn't have it out until that particular point in time, after Underwood got in the car when he was told not to. Your argument has to be that there was time for Mr. Underwood to get in the car to put on the brakes, right? Oh, absolutely. There was time for him to not get in the car. There was time for him to not put it in the drive. There was time for him to not push on the accelerator and let the car continue, or let the car coast directly towards Officer Partridge. I guess what I'm getting at is, is that a disputed fact? Is there a factual dispute about whether the officer stepped in front of a moving vehicle, leaving Underwood with no time to brake? That's not been, there's not a dispute about that. No, sir. That's not in the, as far as I can tell, not in the record and has not been cited. That proposition has never been cited with any authority by the appellant, Mr. Underwood. I'm totally confused about where Partridge is at the time the car starts moving. You keep saying middle of the road. Middle of the road, then if it's a grassy median, that's not in front of Mr. Underwood's car. So I'm not following you at all. Well, I apologize for that, Judge Hall. That's certainly my error. I mean, in the middle of the street, not in the middle of the median dividing the two cars. He is in, he's walking away from his car, which is facing Mr. Underwood's car, and both of which are parked on one side of a one-way street. You agree they're facing each other like that, right? Yes, ma'am. All right, so where is Underwood at the time the car starts moving? That's what I don't understand. I mean, excuse me, where is Officer Partridge? Because you said he went off somewhere over here to go look for that other guy. So I don't know why he's in front of the car, i.e., Mr. Underwood's car, when it starts moving. Seems like he must be off to the side, but maybe I'm missing it. No, Your Honor, what he's doing is he's walking from his car across the street, which would be in front of Mr. Underwood's car. He's gonna try and make it all the way across the street so that he can follow the other individual who was walking away from Mr. Underwood's car when he realizes that Mr. Underwood- I don't even follow that part. Okay. Can you, where are the two cars? Mr. Underwood's car is about 20 to 30 feet away from Officer Partridge's patrol vehicle. Are they facing each other? Yes, ma'am, they are. They're in the same lane? They are in the same lane. Okay, where is Partridge? Partridge is near his patrol vehicle, but walking away from its driver's side door. Walking which way? Across the one-way street. Walking in front of his own vehicle or walking from the driver's side outward? He's walking from his driver's side to the passenger side of Mr. Underwood's vehicle. So he's walking across the one-way street. Okay, so he's walking in front of his car. From his driver's side, yes, in front of his car, closer towards Underwood's car, but to the passenger side of Underwood's car, which is facing the direction that his car is parked. Now, when he realizes Mr. Underwood's gotten in the car, despite being instructed not to, he reverses course. His testimony is he does not remember if he made it all the way across the entirety of that one-way street where both cars are parked and facing one another before he starts walking back towards the other side of that one-way street where his patrol vehicle is parked, not in the direction of where his patrol vehicle is, but to the side over there. So he doesn't know where he is. I mean, he doesn't know where he is in relation to Mr. Underwood's car because he doesn't know where he is. Not with any precision, Your Honor, he does not. He's been trying to observe a suspect who's walking away when he realizes that the car is moving towards him. He becomes alarmed, obviously, and that's when he pulls his firearm and points it at the driver, which ultimately impacts him. And it's at that particular time when he fires the shots. But all of this is really- Let me tell you the factual issue I thought the record had, and you tell me why I'm not right. It's Ms. Harrington's testimony that she says that the shots occurred before Underwood's car moved. I know the officers dispute that, no doubt about all that, and there is some other evidence to dispute that, but we've got Ms. Harrington's testimony, I believe, says the shots were fired before the Underwood car moved. Isn't that what she says? No, ma'am, that is definitely not what she says. All right, what does she say? She says she observes the car moving at the same speed the entire time from the first instant that she observed it. Okay, but how does she say? I know when it's moving, that's fine, it's moving at the same speed, but when does it start to move in relationship to the shots? That's the question. Well, it was moving before the shots were fired. She observes it move past Officer Asareci, who was closer to Mr. Underwood's car than was Officer Partridge, and she sees it move past Officer Asareci and continue in that same direction. Her testimony, though, is that she does not know where Officer Partridge is. She can only see Officer Asareci. And does she say anything about the shots, when the movement and the shots, the timing of the movement and the shots? She says that the shots were fired after it moved past Officer Asareci. Is it undisputed that Officer Partridge stepped in front of a moving car? It's undisputed that he was in the middle of the road when the car was moving towards him. That's what's undisputed. There's no citation in the record indicating that he moved in front of a moving car. Rather, a car began moving towards him when he's in the middle of the road. Okay, because, and I'll tell you the concern that I have is whether or not, based on the law, an officer can use lethal force if he recklessly puts himself in danger or escalates a situation when that was unnecessary to do. Well, in response to that inquiry, Your Honor, I would say that the officer's use of force, given the absolutely undisputed facts in the case, has been consistently upheld as being reasonable within the 11th Circuit. It seems like we do have disputed facts in this case because we are still unable to determine whether or not the car was moving when the officer stepped in front of the car, number one, and number two, whether there was time for Mr. Underwood to brake after he was ordered to stop. Are those facts in dispute? There's not a dispute about those facts, Your Honor. The appellant has cited- Mr. Allen is pleased with you. If he, I would encourage him to point to some citations in the record that would support a dispute the way that it has been characterized just now. I would submit to the court that there is none. What was the crime that Mr. Underwood was being investigated for? A domestic violence situation with two shots fired. As our officers testified, they had no time. This happened within literally seconds of them arriving on the scene. They had no time to ascertain what was going on. It unfolds within an instant, and it's very reasonable and understandable, and the 11th Circuit has held as much for the officers to have believed that that car was a deadly threat that could easily kill or maim Officer Partridge, who was in the road when it was moving towards him. And it had ultimately hit him. Fortunately, he was uninjured. But under those circumstances- All right, so what I'm confused about, and you need to give me record sites so we can look at it, and I'll ask Mr. Allen to do the same. Sounds like, I don't know whether this solves the case or not, but your version is Officer P was in front of the car in the middle of the road, that is, in the middle of that lane when the car started moving. And then there's some evidence that, no, he had moved away from the car and then stepped back in front. I don't know what the evidence is, but is it, just so I understand your position, you're saying all the evidence is that is Officer Partridge was actually in front of the Nissan at the time it started moving because he says, I was in the middle of the street, and the street is that one lane. Is that what it is? Yes, Your Honor. He was in the middle of the street when the car was moving towards him. He doesn't remember exactly how far across the street he had made it before he sort of gravitated back towards the middle when his attention was diverted to Underwood. Okay, wait a minute. Let's stop that right there. You don't know how far he'd gotten before he gravitated to the middle. So he went past the middle and then had to come back? Yes, Your Honor. He was walking across the street. He was walking in front of his car. In front, away from his driver's side door across the one lane street to the other side of the street. Was he walking in front of his car, that one lane street or the other one lane street? In front of his car and towards the passenger side door of Underwood. So he gets out of his vehicle and he's going around his front and he's going in front of the car, looking for the other guy. And then what happens that caused him to come back some? Officer Asarisi yelling at Underwood not to get in the car. Okay. And then he finds himself in the predicament of being in the middle of the road with a car moving at him. And when you say the middle of the road, in the same lane as the moving car? I misspoke again, Your Honor. Yes, ma'am. That is exactly what I mean. You keep saying the middle of the road and there's a grassy median in the middle of the road. That is, I mean, in the middle of the one lane street. It's a two lane street, but it's in the middle of a one lane on that one lane street. Yes, ma'am. Okay. So I need Mr. Allen to tell me where I should look that Mr. Partridge is not at the time the car starts moving, right in front of the car in the middle. Mr. Allen can tell us where we find the contradiction to that. Well, Your Honor, I think- Let's wait until Mr. Kinney has finished his time or maybe he's over. I think I'm over my time, Your Honor. I did have a couple extra points, but my time is up. I'll give you another minute. Thank you. Well, what I wanted to try to find was, I think it's on page, document 37-6, page 99 and then 101, where Officer Partridge testifies that he was practically in the middle of the street when you noticed the car moving. That's his statement in the record. But in conclusion, I'd like to just say that when we demonstrated that our officers were performing a discretionary function on this evening, which is undisputed, the burden switched to the plaintiff to prove that qualified immunity is not applicable. And they have to do that by demonstrating a constitutional violation or the violation of a constitutional right that was clearly established at the time. And that has to be done through binding precedent of either this circuit or the United States Supreme Court. And they have provided no zero case law that would demonstrate either that it was a constitutional violation given the circumstances or that it was a constitutional violation that was clearly established. And with that, I'll rest my case. All right, thank you, Mr. Kinney. And Mr. Allen, you reserve some time for rebuttal. Yes, sir. And what I would point the court to is common sense. There are plenty of cases that establish that one cannot inject themselves into a harmful situation. And when I say one, I mean a law enforcement officer. And use that as a pretext to engage in force so excessive under the circumstances as to concentrate or as to constitute, I should say, a violation of the Fourth Amendment. And that is exactly what happened here. And I think if the case will, think if the court will look at Stryker versus city of Homewood, and the course of this oral argument, it has to conclude that Stryker is controlling in this matter and that there are multiple issues of genuine fact that must be determined by a jury. Let me direct you to Judge Hull's question. She, after hearing Mr. Kinney, suggested that we might need you to say where Officer Partridge was that conflicts with what Mr. Kinney said about where he was. Can you point us to any part of the record that would conflict with or move an open question as to where Officer Partridge was in opposition to what Mr. Kinney said? Well, if you look at the facts in a light most favorable to the plaintiff, which is required under Rule 56, what Mr. Partridge testified to was that he walked across the street. He was not certain as to how far across the street he got, but then turned back. And it was at that point that he holstered his flashlight, pulled his side arm and began shooting at Mr. Underwood within six or eight feet of where he was. Now, both Mr. Underwood and his partner, Mr. Partridge, excuse me, both Asserisi and Partridge admit that Underwood's vehicle was simply placed in gear and was traveling at a rate upon which it appeared as if he would stop in compliance with their directives. Also, there's testimony from one of the officers that Mr. Underwood revved his engine. Of course, there's testimony from Ms. Harrington that the rate of speed never changed, although- Well, she says- I'm sorry. It never changed until after the shots were fired. Correct, there you go. But the point is, presumably one could rev the engine without changing the speed of the vehicle, if, for example, it were a stick shift or something of that nature. So I don't know, is there anything that the plaintiff points to to suggest that the engine was not revved as the officer stated that it was? I've never heard, Your Honor, that the engine was revved. Ms. Harrington's testimony is clear that the car did not accelerate until after the shots were fired. And even when it accelerated, he remained within the speed limit of the neighborhood. You know, for somebody with six shots, that to me is fairly remarkable. And what all of this shows is that the Stryker v. City of Homewood case recently decided by this court shows this is a swearing match that- Can you point to where we can find the evidence to show it's a swearing match? Because I fully agree with you that if there is any kind of contest about what the facts are with respect to these specific things that drive our analysis, then qualified immunity should not have been granted. So we're asking for your help with the record to tell us where we can find them. Well, I would- And particularly, tell me where Officer Partridge was when he shot that your colleague says, yes, he walked across the lane in front of the car. Do you agree when he walked, he walked in front of the car, his patrol car from the driver's side, out in front of his car. And he says he turned back and was still in front of the car when the other officer yelled at Mr. Underwood not to get into his car. That all that was when he was still yelling at him, don't get in the car, don't get in the car. And that's when Partridge turned around. So that would have been before the car moved. Do you follow? I do follow, yeah. Whose testimony besides Partridge should we look at on where Partridge was at the time the car started moving? What else should we look at? Or is it just Partridge's testimony? I think it's pretty much just Partridge's testimony. Assarisi says he didn't know where Partridge was and Assarisi and Partridge testifies, he doesn't know where Assarisi was. So why- It was dark. I mean, it was dark, right? It was dark and they had no lights on. And why they're shooting in each other's direction without knowing where the other is- Okay, I'm just trying to find out before your client gets in the car and starts it, where is Partridge? Okay, and you're saying I just got to go look at Partridge. All right, and I have another question. Can you tell me what part of Mr. Underwood's car hit Partridge? I know it didn't injure him, but do we know whether it was the left side, the right side? What- According to Officer Partridge, he slid across the front end of the hood of the vehicle. From what side? From the passenger side to the driver or the driver to the passenger? From the passenger side to the driver's side. He claimed that paint from the vehicle was evidence of his having been struck. The Alabama Bureau of Investigation had his holster studied and showed that it was house paint and not car paint. Okay, can you help me with this? I don't understand if the car's a part like this, how does Mr. Underwood accelerate? Is he trying to go around in the grassy median? Because it seems like if he accelerated, he would have hit the car. Does he drive it around the grassy- Tell me how that happened. After the shots and assuming whatever happens, where does his vehicle- They are like this to begin with, right? Or 30 feet apart? Well, yes, ma'am, but understand that there are two police vehicles that are located in this fashion, and then Mr. Underwood's vehicle is located here. So he's not in the same lane? He's in another lane? Well, it's only one lane, but the police officer's vehicles are on the side in the median. Okay. As I understand it. And so he had sufficient room to travel past them. And as I understand it, when the facts are looked at in a light most favorable to the plaintiff, he put his car in gear and literally did not hit the accelerator. And by the way, it was a stick shift. And so he did not accelerate until after these law enforcement officers opened fire on his car and him. And he says he got in the car. He doesn't deny he was told not to get in the car. No, ma'am, he does not. Okay. He was just scared for his life. He knew he hadn't done anything wrong and just got in the car. That's correct. He wanted to get out of there. Correct. Mr. Allen, you say that he didn't accelerate until after the shots were fired. Where do we get that from the record? Is that position taken? His deposition was taken, but where you should get it from the record is in Ms. Harrington's deposition and in her declaration. Was Ray James' deposition taken? I'm sorry, who's- Ray James, the guy he was arguing with initially. No, sir, his deposition was not taken. We may have taken a declaration from him. What does he say? He says that the police put a gun to his head and told him if he moved, they were going to shoot his fucking brains out. That's what he has to say. What does he say with respect to whether or not the car was moving when the shots were fired? I don't believe he was concentrated on that fact at that moment. So I don't believe he is dispositive one way or the other. Just to be clear, counsel, though, is there anything in the record that says that Mr. Underwood was not moving at the time that the shots were fired? And if so, where can we find this? I don't believe there's any dispute, but that he was moving at the time that shots were fired. The question is, and what I believe is the linchpin of the case, is, was he dangerous? Was he placing anybody in harm's way? Mr. Assarisi concedes that he never felt threatened. And Mr. Partridge inserted himself between. Between the vehicle, he said it's six or eight feet away when he opened fire on the vehicle. And Miss Harrington says that that Mr. Underwood did not accelerate until after shots were fired. This seems to me to be just on all fours with this court's decision and Stryker versus City of Homewood. In which there is just a material issue of fact that should be decided by a jury. And tell us what the issue of fact is. Well, there are many, aren't there? Just give me a couple. All right. Uh, where was Mr. Partridge from? What angle did he begin shooting? Why did he begin shooting? So the issue is, where was Mr. Partridge at the time he started in relation to the moving car? Yes, ma'am. And we believe that goes back to what we've been talking about and trying to figure out all along, where was Mr. Partridge at the time? And you say his own testimony creates an issue of fact as to where he was. Yes, ma'am. Yes, ma'am. And I think if you were to see the vehicle. That the evidence would show that the first shot fired came from the. If the vehicle is pointing at me, the first shot fired came from the passenger side of the vehicle into the. Into the car. And the subsequent shots came from the right hand side. And and if. You mean the driver's side? Yes, ma'am. Through the windshield, did the shots come? I meant to ask this. Did the shots come through the front windshield or from the side windows? Well, they came from all directions. No, but where did they enter the vehicle? Did they enter the front? Do we have a picture of the vehicle after the shooting? I don't believe that there is a picture of the vehicle in the record. After the shooting. And did all the bullets come in through the front windshield or did some of them enter the vehicle through the passenger window? Well, they came from all directions. Certainly the back window was shot out. Uh, there are. Well, that's a sorority that didn't hit him. I mean, that must have been a sorority bullet. But it's cartridges whose bullets injured your client. I wish I could tell you, but I cannot. We don't know. We don't know. And some of the bullets remain inside my client. And so we may never know. All right, I think we have your arguments, counsel. Thank you, Mr. Kenny and Mr. Allen. Thank you, sir. Can I be more remorseful about my technology failure earlier today? Let me tell you, we have that all the time. You don't need to be remorseful about anything. OK, I had I had sometimes at my house. That's why I come to the courthouse now. But my house, my house was unstable connection, as they say. Well, you don't need to give that a second thought. We have that all the time. Well, thank you so much. Just don't worry about that. It happens. All right. Court is in recess until nine o'clock Central Standard Time tomorrow morning. Thank you all.